S T A T E   O F   M I C H I G A N
C O U R T   O F   A P P E A L S

HURON CITY COMPANY,

        Plaintiff-Counter Defendant-
        Appellee,

v

CHARLES ABRAM PARCELLS, III and DAVID
HAMILTON PARCELLS,

        Defendants-Counter Plaintiffs-Third
        Party Plaintiffs-Appellants,

and

DIANE STEWART, HENRY STEWART,
BENJAMIN STEWART, JOSHUA STEWART,
WALTER WAGONER, LYNDA BOGEL, JEFF
PARCELLS, GRETCHEN MADISON, STEVE
PARCELLS, NATHAN PARCELLS, and
MATTHEW PARCELLS,

        Third Party Defendants.[1]

UNPUBLISHED
February 8, 2018


No. 335978
Huron Circuit Court
LC No. 12-105093-CZ

Before: RONAYNE KRAUSE, P.J., and FORT HOOD and O'BRIEN, JJ.

PER CURIAM.

        Defendants-Counter Plaintiffs-Third Party Plaintiffs (Defendants) appeal as of right the trial court's order dismissing the remaining claims in their second amended counter-complaint,

---

[1] Defendants-Counter Plaintiffs-Third Party Plaintiffs (Defendants) filed an amended counter complaint on March 13, 2014, in which they added the listed third-party defendants to this action. On May 15, 2014, the trial court entered an order striking the third-party defendants from the case because they were not properly added. Defendants subsequently filed a motion to add the third-party defendants as necessary parties, which the trial court denied. As a result, the third-party defendants did not participate in this case at trial or on appeal.

-1-

effectively closing the case. However, the issues raised by defendants relate to earlier rulings. The first issue relates to the trial court's order dismissing defendants' claim that plaintiff-counter defendant (plaintiff) breached its Articles of Incorporation and the trial court's order denying defendants' motion for reconsideration of that order. The second issue relates to the trial court's order granting plaintiff's motion for summary disposition under MCR 2.116(C)(8) and dismissing defendants' claims of self-dealing, misappropriation of corporate opportunities, and waste of corporate assets. We affirm.

This case arises from an ongoing dispute between plaintiff, a closely held corporation whose shareholders are all extended family members, and defendants, who are shareholders of plaintiff. Plaintiff owns a 1400 acre parcel of real property and, through a limited liability company owned solely by plaintiff, leases various portions of the property to private individuals and entities. This case began when plaintiff brought a complaint against defendants alleging that defendants were harassing and intimidating guests that were leasing plaintiff's land. That complaint was eventually settled after a case evaluation. Pertinent to this appeal, defendants filed a second amended counter-complaint[2] that raised nine counts, including "self dealing with the corporation (MCL 450.1545a)," "misappropriation of corporate opportunities," "waste of corporate assets," and "breach of articles of incorporation." Relevant to this appeal, defendants' claim for breach of the articles of incorporation alleged that plaintiff was violating Article XI Section E (Article XI(E)) of its Articles of Incorporation by leasing company property because Article XI(E) required an 80% supermajority vote before plaintiff could lease land. In pertinent part, the text of Article XI(E) provides as follows:

> The affirmative vote of holders of eighty percent (80%) of the shares in attendance, either in person, by proxy or by teleconference of other electronic means, at a validly called meeting of the shareholders at which a quorum is present, shall be necessary for the following corporate action:

> * * *

> (E) Sale, long-term lease or exchange of the property or assets of the corporation with a value in excess of Fifty Thousand Dollars ($50,000.00) in any calendar year or the disposition of any real property.

Defendants conceded that the first part of Article XI(E) was inapplicable, but argued that a lease constituted a "disposition of any real property."

---

[2] Defendants originally filed their counter-complaint in March 2014. This complaint was later amended, and the amended complaint impermissibly added third-party defendants. Rather than dismissing defendants' counter-complaint and forcing defendants to refile, the trial court decided to strike defendants' amended counter-complaint and allow them to file a second amended counter-complaint, which led to the filing of the second amended counter-complaint now at issue.

Plaintiff filed a motion for summary disposition, arguing that its leasing of its property did not violate Article XI(E). After hearing oral arguments on the issue, the trial court held that a disposition of real property encompassed only a permanent transfer of real property, and did not include a lease. Accordingly, the trial court dismissed defendants' claim that plaintiff breached its Articles of Incorporation. Defendants filed a motion for reconsideration, which the trial court denied. In its ruling, the trial court reiterated that, to trigger the supermajority requirement in Article XI(E), there needed to be a "permanent transfer" of real property, and because a lease was not a permanent transfer, Article XI(E) was inapplicable. Defendants filed leave to appeal the trial court's decision to this Court, which was denied. *Huron City Company v Parcells*, unpublished order of the Court of Appeals, issued October 7, 2015 (Docket No. 327988). Defendants then sought leave to appeal to the Michigan Supreme Court, which was also denied. *Huron City Company v Parcells*, 499 Mich 916 (2016).

Afterwards, plaintiff brought a motion for summary disposition in the trial court pursuant to MCR 2.116(C)(8) for defendants' claims of self-dealing, misappropriation of corporate opportunities, and waste of corporate assets. In the motion, plaintiff contended that each count was a derivative claim and that defendants had not taken the proper steps for commencing a derivative proceeding. Specifically, plaintiff asserted that defendants did not state in their pleadings that they complied with, and in fact failed to comply with, the requirements of MCL 450.1493a, which required defendants to file a written demand to plaintiff to take "suitable action" and then wait 90 days before commencing the derivative proceedings. Plaintiff contended that, because defendants' claims were derivative and defendants had failed to commence a derivative proceeding, defendants lacked standing to file their derivative claims. In response, defendants argued that plaintiff's claim was more properly classified as a motion under MCR 2.116(C)(5) (party asserting claim lacks capacity to sue) and, even if the claim was proper under MCR 2.116(C)(8), plaintiff had waived this defense by not raising it in its responsive pleading.

After hearing oral argument, the trial court found that defendants' claims of self-dealing, misappropriation of corporate opportunities, and waste of corporate assets were all derivative claims. The trial court held that, as derivative claims, they must be brought in the name of the corporation in a derivative proceeding, and that defendants had failed to state that they took the proper steps to commence a derivative proceeding. The trial court concluded that defendants, as shareholders not acting on behalf of the corporation, were not the proper party in interest and, therefore, lacked standing to bring these derivative claims. The trial court also noted that plaintiff had not waived its challenge to defendants' standing because issues of justiciability could be raised at any stage in the proceeding and may not be waived by the parties. Two weeks after the trial court issued this ruling, the parties stipulated to dismiss defendants' remaining claims against plaintiff, and the trial court entered an order to that effect.

On appeal, defendants first argue that the trial court erred by denying their motion for reconsideration because it incorrectly held that a lease is not included within the meaning of "disposition of any real property." We disagree. "We review a trial court's decision on a motion for reconsideration for an abuse of discretion." *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). "[Q]uestions involving the proper interpretation of a

contract or the legal effect of a contractual clause are . . . reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

When considering a motion for reconsideration, "[i]n order to establish the right to relief, the party bringing the motion . . . must establish that the trial court made a palpable error and a different disposition would result from correction of the error." *Huntington Nat'l Bank v Daniel J. Aronoff Living Trust*, 305 Mich App 496, 516; 853 NW2d 481 (2014). As previously stated, Article XI(E) states in pertinent part as follows:

> The affirmative vote of holders of eighty percent (80%) of the shares in attendance, either in person, by proxy or by teleconference of other electronic means, at a validly called meeting of the shareholders at which a quorum is present, shall be necessary for the following corporate action:
>
> * * *
>
> (E) Sale, long-term lease or exchange of the property or assets of the corporation with a value in excess of Fifty Thousand Dollars ($50,000.00) in any calendar year *or the disposition of any real property*. [Emphasis added.]

Defendants do not assert that the first portion of Article XI(E) was triggered by plaintiff's short-term leasing of its property. Rather, defendants only contend that the trial court erred by concluding that the phrase "disposition of any real property" required that there be a "permanent transfer" of the property.

Plaintiff's Articles of Incorporation do not define "disposition," so it is appropriate to look to a dictionary to ascertain the plain and ordinary meaning of the term. See *Coates v Bastian Bros, Inc*, 276 Mich App 498, 504; 741 NW2d 539 (2007). *Random House Webster's College Dictionary* (1997) lists a variety of definitions for "disposition," but the only definitions that are pertinent as the term is used in Article XI(E) are "final settlement of a matter" and "bestowal as by gift or sale." See *Feyz v Mercy Mem Hosp*, 475 Mich 663, 685 n 62; 719 NW2d 1 (2006) ("[B]ecause a word can have many different meanings depending on the context in which it is used, and because dictionaries frequently contain multiple definitions of a given word, in light of this fact, it is important to determine the most pertinent definition of a word in light of its context."). Based on these definitions of "disposition," both of which indicate finality, conclude that the trial court did not err by ruling that the "disposition of any property" as used in Article XI(E) was only applicable to permanent transfers of property. See *In re Kostin*, 278 Mich App 47, 54; 748 NW2d 583 (2008) (concluding that "disposition" was defined as the "final settlement of a matter" or "bestowal, as by gift or sale").[3]

---

[3] Defendants argue that the *Kostin* panel's conclusion is not applicable to this case because that panel's conclusion was based on different facts. The *Kostin* panel relied upon *Random House Webster's College Dictionary* (2001) for defining "disposition," and that dictionary lists multiple definitions of the word. While we recognize that we are presented with a different set of facts

Defendants urge this Court to look to *Black's Law Dictionary* (10th ed) for the definition of "disposition," which provides as follows:

1. The act of transferring something to another's care or possession, esp. by deed or will; the relinquishing of property <a testamentary disposition of all the assets>.

2. A final settlement or determination <the court's disposition of the case>.

\* \* \*

3. Temperament or character; personal makeup <a surly disposition>.

Defendants contend that "disposition" should be defined using only the first part of the first definition: "The act of transferring something to another's care or possession." However, contrary to defendants' contention, the semicolon in the first definition was not intended to signal a wholly separate definition, nor was it intended to indicate that the two clauses were "mutually exclusive." The first definition was clearly intended to be taken as a whole; otherwise, the two clauses would have been numbered separately like the other definitions. Because the second part of *Black's* definition is "the relinquishing of property," the trial court correctly looked to the dictionary definition of "relinquish," which is a verb that means "to renounce or surrender (a possession, right, claim, etc.)." *Random House Webster's College Dictionary* (1997).[4] Thus, like the definition from *Random House Webster's College Dictionary*, *Black's Law Dictionary*'s definition of "disposition" in the context of transferring property indicates a final, rather than temporary, act. This conclusion is also in line with the qualifier in the first part of the *Black's* definition, "esp. by deed or will," both of which indicate finality of the transfer. Accordingly, the trial court properly determined that a lease did not constitute a "disposition of any real property" in the context of Article XI(E), and it did not subsequently abuse its discretion by denying defendants' motion for reconsideration of the issue.

Next, defendants argue that the trial court erred by granting plaintiff's motion for summary disposition and dismissing defendants' claims of self-dealing, misappropriation of

---

than the *Kostin* panel, we nonetheless find that the definitions of "disposition" that were relevant to that case are equally relevant to the case before us. Moreover, defendants do not point to a different definition from the *Random House* dictionary that is better suited for the facts of this case. Instead, as will be discussed more fully, defendants rely on a different dictionary's definition. Therefore, defendants' argument that *Kostin*'s definition of "disposition" is not relevant to this case is unconvincing.

[4] *Black's Law Dictionary* (10th ed) defines "relinquish" as "[t]he abandonment of a right or thing," and it defines "abandonment" as "[t]he relinquishing of a right or interest with the intention of never reclaiming it." Thus, although these definitions are circular, *Black's* definition of "relinquish" indicates a permanent transfer, which supports the trial court's conclusion.

corporate opportunities, and waste of corporate assets. We disagree. "We review de novo a trial court's grant of summary disposition." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). As explained by our Supreme Court in *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999),

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [Citations and quotation marks omitted.]

Whether a plaintiff has standing is a question of law, which is reviewed de novo. *Crawford v Dep't of Civil Serv*, 466 Mich 250, 255; 645 NW2d 6 (2002).

Defendants first argue that the trial court erred by concluding that plaintiff did not waive its challenge to defendants' standing because plaintiff did not raise the defense in its responsive pleading. Contrary to defendants' assertion, it is error for a court to summarily conclude, without further analysis, that a party must raise a defense in its first responsive pleading or the defense is waived. See *Leite v Dow Chem Co*, 439 Mich 920 (1992) ("The Court of Appeals erred when it interpreted MCR 2.116(D)(2) and MCR 2.111(F)(3) as though they required that the defendants' affirmative defense be raised in their first responsive pleading or be waived."). Instead, the court must look to when the defense may be raised under MCR 2.116(D). *Id*. The issue of standing, or "the real-party-in-interest defense," is properly raised in a motion under MCR 2.116(C)(8) or (10), "depending on the pleadings or other circumstances of the particular case." *Id*. As such, whether a party has standing can be raised at any time. See MCR 2.116(D)(4) (stating that a motion under MCR 2.116(C)(8) and (10) "may be raised at any time" unless otherwise specified); *46th Circuit Trial Court v Crawford Co*, 266 Mich App 150, 177-178; 702 NW2d 588 (2005), rev'd on other grounds 476 Mich 131 (2006) (stating that a challenge to standing that is raised under MCR 2.116(C)(8) "can be raised at any time"). Therefore, plaintiff did not waive its challenge to whether defendants lacked standing by not raising the issue in its responsive pleadings because it could raise the issue at any time.

The relevant inquiry then becomes whether the trial court correctly determined that defendants lacked standing. Defendants do not contest on appeal that the trial court properly determined that its claims of self-dealing, misappropriation of corporate opportunities, and waste of corporate assets were derivative claims. In a proceeding addressing derivative claims, "[a]ny recovery runs in favor of the corporation, for the shareholders do not sue in their own right." *Futernick v Statler Builders, Inc*, 365 Mich 378, 386; 112 NW2d 458 (1961). "In general, a suit to enforce corporate rights or to redress or prevent injury to the corporation, whether arising out of contract or tort, must be brought in the name of the corporation and not that of a stockholder, officer or employee." *Mich Nat'l Bank v Mudgett*, 178 Mich App 677, 679; 444 NW2d 534

(1989).[5]   Therefore, the real party in interest for a derivative claim is the corporation, and a shareholder must commence a derivative proceeding on behalf of the corporation; otherwise, the shareholder lacks standing to bring the derivative claim.  See *id*. at 680 ("[W]here the alleged injury to the individual results only from the injury to the corporation, the injury is merely derivative and the individual does not have a right of action against the third party."); MCR 2.201(C) (stating that "[a]n action must be prosecuted in the name of the real party in interest")

Pursuant to MCL 450.1492a, for a shareholder to be eligible to commence a derivative proceeding, the shareholder must satisfy the following criteria:

A shareholder may not commence or maintain a derivative proceeding unless the shareholder meets all of the following criteria:

(a) The shareholder was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one who was a shareholder at that time.

(b) The shareholder fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

(c) The shareholder continues to be a shareholder until the time of judgment, unless the failure to continue to be a shareholder is the result of corporate action in which the former shareholder did not acquiesce and the derivative proceeding was commenced prior to the termination of the former shareholder's status as a shareholder.

There is no doubt that defendants were shareholders eligible to commence derivative proceedings against plaintiff.  But, pursuant to MCL 450.1493a, there are prerequisites for commencing a derivative action, which are as follows:

A shareholder may not commence a derivative proceeding until all of the following have occurred:

(a) A written demand has been made upon the corporation to take suitable action.

(b) Ninety days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

---

[5] This Court in *Mich Nat'l Bank*, 178 Mich App at 679, recognized that there were circumstances in which the "general rule" regarding who could pursue a derivative suit "is inapplicable," such as "where the individual shows a violation of a duty owed to him directly."  On appeal, defendants do not contend that any exception applies, so we do not address any.

In this case, because plaintiff filed its motion for summary disposition under MCR 2.116(C)(8), we only consider the pleadings. See *Rozwood*, 461 Mich at 119-120. Defendants did not plead that they filed a written demand to plaintiff to take suitable action. See MCL 450.1493a(a). This is also in violation of MCR 3.502(A), which provides that

> [i]n an action brought by one or more shareholders in an incorporated or unincorporated association because the association has refused or failed to enforce rights which may properly be asserted by it, the complaint shall set forth under oath and with particularity the efforts of the plaintiff to secure from the managing directors or trustees the action the plaintiff desires and the reasons for the failure to obtain such action, or the reasons for not making such an effort.

Accordingly, based on the pleadings, defendants failed to state that they were commencing derivative proceedings.

However, Michigan Courts have recognized that the written demand requirement is not necessary if the shareholder provides proof that the demand would be futile. See *Futernick*, 365 Mich at 387 (stating that "[t]he minimum requirements for" a derivative proceeding include either a "demand on said board by the stockholder for such action or proof that the demand would be useless"). But even in spite of this futility exception to the written demand requirement, defendants still failed to plead that they were commencing a derivative proceeding because they did not plead that a demand would have been futile. While defendants point out that they asserted at the hearing on plaintiff's motion for summary disposition that a demand would have been futile, defendants never requested to amend their complaint to reflect this assertion, despite the fact that the court rules governing summary disposition permit amendment when a motion is granted for failure to state a claim. See MCR 2.116(I)(5). As such, based on the pleadings, defendants failed to state that they had filed a written demand or that a written demand would have been futile, thus failing to satisfy the requirements of MCL 450.1493a. Therefore, defendants' claims were facially deficient; defendants were attempting to improperly raise derivative claims on behalf of themselves, as shareholders, rather than on behalf of the corporation, who was the real party in interest. See *Mich Nat'l Bank*, 178 Mich App at 680; MCR 2.201(C). Accordingly, the trial court properly granted plaintiff's motion for summary disposition under MCR 2.116(C)(8) because defendants, as shareholders acting on behalf of themselves, lacked standing to pursue the derivative claims against plaintiff.[6]

---

[6] Defendants claim that they satisfied the demand requirement through certain e-mails that they sent to plaintiff prior to commencing this action. However, in a motion brought under MCR 2.116(C)(8), only the pleadings are to be considered, *Rozwood*, 461 Mich at 119-120, and defendants did not reference these e-mails in their pleadings. Regardless, we have reviewed the e-mails, and they clearly do not satisfy the written demand requirement. They pertain to accounting and suggested actions for plaintiff to take. The e-mails do not contain any demands for "the corporation to take suitable action" as required by MCL 450.1493a. In fact, the e-mails do not contain any demands at all. Moreover, the suggested actions in the e-mails do not pertain to any of the claims brought by defendants. To the extent that they do relate to those claims, if at

Affirmed.

/s/ Amy Ronayne Krause
/s/ Karen M. Fort Hood
/s/ Colleen A. O'Brien

---

all, the relationship is tangential at best.  Accordingly, even were we to consider the e-mails, we would find that they did not satisfy the demand requirement in MCL 450.1493a.